UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| PATRICK CHIDUME,<br><br>        Plaintiff,<br><br> -against-<br><br>GREENBURGH-NORTH CASTLE UNION FREE SCHOOL DISTRICT; CAROLYN MCGUFFOG, SUPERINTENDENT OF SCHOOLS; ROBIN LEVINE, DIRECTOR OF PUPIL PERSONNEL; ROBERT HENDRICKSON, FORMER INTERIM PRINCIPAL OF CLARK SCHOOL/BOARD PRESIDENT,<br><br>        Defendants. | 18-cv-1790 (NSR)<br><br>OPINION & ORDER |

NELSON S. ROMÁN, United States District Judge

  On February 27, 2018, Plaintiff Patrick Chidume ("Plaintiff"), a former teacher in the Greenburgh-North Castle Union Free School District ("the District"), commenced this action under: Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981 and 1983, New York State Human Rights Law § 296, and New York State common law. Plaintiff alleges that while he was a teacher in the District, he was subject to race and national origin discrimination, retaliation, constructive discharge, defamation, intentional and negligent infliction of emotional distress, and constructive discharge by the Greenburgh-North Castle Union Free School District, Carolyn McGuffog ("McGuffog"), Robin Levine ("Levine"), and Robert Hendrickson ("Hendrickson") (collectively, "Defendants"). Before the Court is Defendants' Motion to Dismiss the Second Amended Complaint (("SAC"), ECF No. 24) pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(2). For the following reasons, Defendants' motion is GRANTED.



1

# BACKGROUND[1]

Plaintiff was a tenured social studies teacher in the Greenburgh-North Castle Union Free School District, a special act school district, servicing students with disabilities. A teacher since 1985, he began teaching in the District in March 1998 and continued through until June 2018. In September 2005, he began teaching at Clark Academy, one of the schools within the District. Between July 1, 2014 and June 30, 2017, Plaintiff also served as President of the Greenburgh United Teachers Union. Plaintiff is of Nigerian national origin. (*See* SAC ¶¶ 5, 9-12.)

In his capacity as Union President, Plaintiff commenced several grievances against the District on behalf of various staff members within the District who were part of the Union. (*Id*. ¶ 13.) On June 1, 2017, Plaintiff filed a group grievance on behalf of the 42 teaching assistants who had their positions abolished at once by District Superintendent Carolyn McGuffog, a Caucasian. Almost all of these teaching assistants were black or Hispanic. (*Id*. ¶ 14.) The grievance claimed that McGuffog violated the union contract when she abolished their entire class. Prior to filing this grievance, Plaintiff had always received all Satisfactory or Effective teaching ratings and had no disciplinary history or allegations against him of which he was aware. (*Id*. ¶ 15.)

In response to the grievance, Superintendent McGuffog allegedly went into a tirade. She screamed at Plaintiff and warned him that he would be held responsible if the school district was shut down. She also told him that, as a Union President, he should protect the majority of the membership and withdraw his grievance on behalf of teaching assistants. (*Id*. ¶ 17.)

Plaintiff believes that in response to his grievance, McGuffog also deliberately retaliated against him in a number of ways. First, McGuffog allegedly filed false allegations against Plaintiff with the New York State Justice Center. (*Id*. ¶ 16.) In September 2017, she also allegedly

---

[1] The following facts are derived from the SAC and are assumed to be true for the purposes of this motion.

involuntarily transferred Plaintiff out of Clark Academy, where he had taught for many years. (*Id*.) Then, on June 23, 2017, a New York State Education Department Investigator allegedly confronted Plaintiff at work and told him that he was the subject of an investigation regarding allegations about performing union activities during teaching time and using students for coffee and personal errands. Plaintiff vigorously denied these allegations. (*Id*. ¶ 18.) Plaintiff also later learned that Nicodemo, who is white, was allowed to conduct union business during worktime, even though misconduct allegations were brought against Plaintiff for allegedly doing the same thing during his time as the union president. (*Id*. ¶ 29.)

On July 5, 2017, the current Union President, Anthony Nicodemo, told Plaintiff that McGuffog did not like Plaintiff and found his accent "repugnant." (*Id*. ¶ 19.) Nicodemo added that McGuffog also allegedly expressed confusion to Nicodemo as to how Plaintiff was elected union president in a school district in which the staff is 80% white. (*Id*.)

On July 17, 2017, Plaintiff was called into a meeting with Nicodemo and McGuffog. There, Plaintiff was told that there were several allegations against him, which the District lawyer had allegedly substantiated. (*Id*. ¶ 20.) During the meeting, McGuffog read off several allegations against Plaintiff from a letter dated June 30, 2017, handed him a Residential School Action Plan ("RSAP"), and told Plaintiff he would be involuntarily transferred to a different school starting September 5, 2017. (*Id*. ¶ 21.)

After being told that he was being involuntarily transferred, Plaintiff filed a New York State Division of Human Rights ("SDHR") charge on race and national origin discrimination, and shortly after filed an Equal Employment Opportunity Commission ("EEOC") charge. (*Id*. ¶ 22.) Subsequently, on August 15, 2017, a New York State Justice Center Investigator questioned Plaintiff about an allegation that Plaintiff told his students that a man has a "right" to rape his wife.

(*Id*. ¶ 23.) Plaintiff denied this and explained it was part of a lesson on foreign cultures. (*Id*.) The Investigator accepted this explanation and told Plaintiff the case would be closed. (*Id*.) Plaintiff later learned that the entire investigation came from false accusation that District Director of Personnel Robin Levine and Interim Principal Robert Hendrickson allegedly coerced from students. (*Id*. ¶ 24.) The stress from these purportedly discriminatory and retaliatory practices allegedly caused Plaintiff to take a medical leave in September 2017. (*Id*. ¶ 25.)

On October 3, 2017, after Plaintiff filed SDHR and EEOC charges (and after Plaintiff had also filed a charge with the New York State Public Employment Relations Board ("PERB")), an investigator from the Justice Center returned to Plaintiff's school and spoke to Plaintiff's former teaching aide, asking if Plaintiff got along well with other staff members and whether he abused students. (*Id*. ¶ 26.)

Plaintiff then withdrew his SDHR and EEOC charges for administrative convenience and received a right to sue letter from the EEOC dated December 11, 2017. (*Id*. ¶ 27.) On or about October 17, 2017, Plaintiff received a letter from the New York State Justice Center substantiating the allegations of "psychological abuse" against him. (*Id*.) He then filed a notice of claim against Defendants, which has supposedly not been adjusted to date. (*Id*. ¶ 30.)

Plaintiff claims that he has suffered economic damages resulting from his discrimination and retaliation. For example, he alleges that the District did not pay Plaintiff for February break in 2018, which was just after he commenced his federal action. (*Id*. ¶ 31.) Plaintiff claims that he suffered additional economic damages in the form of out of pocket medical expenses and other potential per session and summer school opportunity losses. (*Id*. ¶ 36.) On April 27, 2018, the District also demanded that Plaintiff attend an involuntary Section 913 statutory medical and psychiatric exam during his medical leave. Out of four teachers who missed time during the 2017-

18 schoolyear for medical leave, only Plaintiff was singled out for this exam. The other three teachers were white. Plaintiff was also identified on the board agenda meeting by name, as opposed to the customary method of using employee number (*Id*. ¶ 32.)

In May 2018, the District stopped paying Plaintiff's salary, despite having sufficient leave time to continue receiving it. (*Id*. ¶ 33.) Plaintiff did not receive any more payroll checks after May 30, 2018 and was allegedly forced to retire earlier than he planned. Hence, he alleges that he was constructively discharged. (*Id*. ¶ 34.) On July 17, 2018, Plaintiff attempted to pick up his personal belongings, but was told they had been disposed of. These included an Apple laptop, a camera, a tablet, and a refrigerator. (*Id*. ¶ 35.)

## STANDARDS OF REVIEW

### I. Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), the inquiry for motions to dismiss is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679. The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id*. at 679. A claim is facially plausible when the factual content

pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678.

## II. Federal Rule of Civil Procedure 12(b)(2)

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 507 (2d Cir.1994). Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction. *Ball v. Metallurgie Hoboken–Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir.), *cert. denied,* \*567 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990). In contrast, when an evidentiary hearing is held, the plaintiff must demonstrate the court's personal jurisdiction over the defendant by a preponderance of the evidence. *Robinson,* 21 F.3d at 507 n. 3.

## III. Service and Personal Jurisdiction

Under the federal rules, for cases involving employment discrimination, service upon a school district must be effectuated in accordance with Fed R. Civ. P. 4(j)(2), which provides:

> Service upon a state, municipal corporation, or other governmental organization subject to suit shall be effected by delivering a copy of the summons and of the complaint to its chief executive officer or by serving the summons and complaint in the manner prescribed by the law of that state for the service of summons or other like process upon any such defendant.

Fed.R.Civ.P. 4(j)(2). Further, federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons. *See* Fed. Rule Civ. Proc. 4(k)(1)(A) (service of process is effective to establish personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located"). *Daimler AG v. Bauman*, 571 U.S. 117, 125, 134 S. Ct. 746, 753, 187 L. Ed. 2d 624 (2014). In New York, therefore,

personal jurisdiction will be proper where service is effective pursuant to New York Civil Practice Law ("CPLR") and Rules and New York Education Law.

NY CPLR Section 311 provides that personal service upon a corporation or governmental subdivision shall be made by delivering the summons "upon any domestic or foreign corporation, to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent *authorized by appointment or by law* to receive service." N.Y. C.P.L.R. § 311 (emphasis added). Since school district and school district officers are municipal officers, service upon them need also further comply with the specifics of New York Education Law.

New York Education Law provides that the superintendent of schools of a city school district is the chief executive officer of the school district. N.Y. Educ. Law § 2508(1). The New York Civil Practice Law and Rules state that a "school officer" may also receive service of process. N.Y. C.P.L.R. § 311(7). The New York Education Law defines "school officer" as:

> a clerk, collector, or treasurer of any school district; a trustee; a member of a board of education or other body in control of the schools by whatever name known in a union free school district, central school district, central high school district, or in a city school district; a superintendent of schools; a district superintendent; a supervisor of attendance or attendance officer; or other elective or appointive officer in a school district whose duties generally relate to the administration of affairs connected with the public school system.

N.Y. Educ. Law § 2(13). Notably, this list does not include an assistant principal, but does include a broad catch-all for an "elective or appointive officer in a school district whose duties generally relate to the administration of affairs connected with the public school system."

## DISCUSSION

Defendants raise a host of jurisdictional and merits-based arguments related to the Court's personal jurisdiction, adequate service, exhaustion, and Plaintiff's adequate pleadings. The Court begins with the jurisdictional threshold matters.

7

### I. Service

Defendants argue that Plaintiff's attempted service of the Summons and Complaint upon Defendants by service upon Assistant Principal Anderson is inadequate to provide the Court with personal jurisdiction over any of them. (Defendants' Memorandum in Support of Motion to Dismiss, ("Def. Mem."), ECF No. 30, at 10.) Plaintiff, however, argues that the Court does have personal jurisdiction over all Defendants because: 1) service of the original Complaint upon the Assistant Principal was sufficient, 2) Defendants have failed to articulate how they would be prejudiced by if they were to defend this suit, 3) Defendants never mentioned this defect in their pre-motion letter to the Court, and 4) Defendants have had actual notice of this litigation for the last year-and-a-half, as they all retained counsel who made electronic notices of appearance on ECF, where Plaintiff uploaded the First and Second Amended Complaints. (Plaintiff's Memorandum Opposing Motion to Dismiss, ("Pl. Mem."), ECF No. 31, at 9-10.)

The Court first notes that it agrees that Defendants did not articulate how they would be prejudiced if required to defend this suit and did not even discuss their service argument in their reply memorandum. (*See* Defendants' Reply Memorandum *("Def. Rep. Mem."),* ECF No. 32.) Further, as Plaintiff mentioned, Defendants retained counsel who filed a notice of appearance on behalf of all of them in March 2018, (ECF No. 11), and Defendants counsel received electronic notice of the Amended Complaint (ECF No. 21) and Second Amended Complaint (ECF No. 24), which were subsequently filed. Moreover, Defendants never previously raised any service issues in either their pre-motion letter to the Court or in their pre-motion conference before the Court. (*See* ECF No. 18; Docket Entry Dated 10/04/2018.)

But at best, these facts reflect that Plaintiff had some legitimate basis for believing that: 1) service of the Original Complaint upon the Assistant Principal was adequate, or 2) Defendants

8

waived proper service, or 3) Defendants were content with constructive notice of the action since they were seemingly participating in the litigation. (*See id.*)

The Court is still confined by the rules of personal jurisdiction set out in Fed. R. Civ. P. 4(m), which provides: "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m)." And again, Fed. R. Civ. P 12 (b)(2) places the burden of showing that the court has jurisdiction over the defendant on the plaintiff. *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 507 (2d Cir.1994). P

Here, neither party disputes that the only person who was ever served in person on behalf of all Defendants was the Assistant Principal, upon whom Plaintiff only served the Original Complaint on April 17, 2018. (*See* ECF Nos. 13-16.) Plaintiff has not met his burden of proof in showing that the Assistant Principal suffices as a "school officer" who can accept service on behalf of the school district or other school officials under New York Education law. He also has not shown that service of just the Original Complaint *in-person*, and subsequent *electronic* filings of the amended complaint satisfy the state and federal service requirements.

Notwithstanding these defects, the Court finds it appropriate to opt for the second option and provide additional time to allow Plaintiff to effect proper service on each Defendant. This is because there is a significant difference between the instant case and both *Carl v. City of Yonkers,* No. 04 CIV. 7031 (SCR), 2008 WL 5272722 (S.D.N.Y. Dec. 18, 2008), *aff'd*, 348 F. App'x 599 (2d Cir. 2009) and *Zapata v. City of New York*, 502 F.3d 192 (2d Cir. 2007), upon which Defendants rely in support of their argument that the Court should not exercise its discretion to allow Plaintiff to enjoy an extension of time to effectuate service. In both those cases, the Court

found that nothing in the record reflected that Defendants had *any* notice about the pending action, which is the opposite of the instant action. *See Zapata,* 502 F.3d at 198 ("Nothing in the record besides the 2002 incident itself suggests Officer Moran had any notice that the action was forthcoming (much less already pending)"); *Carl,* 2008 WL 5272722 ("Defendants aver that they have never received hard copies of the complaint, they have never participated in this action, and (as in Zapata, id. at 198) there is no indication in the record that they had notice of it.").

Again, both these cases are the opposite situation to the present, in which Defendants had clear notice of the pending litigation, and the service issues were either ignored or neglected. All Defendants retained counsel, and he filed an electronic notice of appearance on behalf of all of them before the amended complaints were filed. He also appeared before this Court for a pre-motion conference and wrote a letter submission regarding his anticipated Motion to Dismiss for this Court, in which he never raised the service issue. Because Defendants had clear constructive notice of the litigation, the Court finds that Plaintiff would be far more likely to suffer prejudice if he is not allowed to cure his defect, than would Defendants.

Accordingly, the Court grants Plaintiff an additional 60 days to cure his service defect so that the Court may exercise proper personal jurisdiction on this case and reach the merits.

## II. Remaining Arguments

As the Court mentioned earlier, Defendants also moved to dismiss on a number of grounds under Fed. Rule Civ. P. 12(b)(6). The Court cannot address these arguments at this juncture, since the court finds it has no personal jurisdiction. *Porco v. Phoenix Bldg. Corp.*, No. 18 CV 5938 (NSR), 2019 WL 2210659, at *3 (S.D.N.Y. May 21, 2019) ("A court must dismiss an action against any defendant over whom it lacks personal jurisdiction."); Fed. R. Civ. P. 4(m). Therefore,

should Plaintiff properly serve Defendants, and should Defendants re-file their Motion to Dismiss at a subsequent date, the Court will address any ripe issues at future junctures.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED without prejudice, solely on grounds that it is presently improperly before this Court. Plaintiff shall have until September 1, 2019 to effect proper service on each named Defendant in accordance with New York state law. Defendants may then answer the Second Amended Complaint or refile their submissions should they so choose. Should Plaintiff fail to timely comply with this Opinion and Order the action may be deemed dismissed with prejudice. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 26.

Dated: July 3, 2019                                                 SO ORDERED:
        White Plains, New York

NELSON S. ROMÁN
United States District Judge