UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
 PATRICK CHIDUME,

                       Plaintiff,

v.

GREENBURGH-NORTH CASTLE
UNION FREE SCHOOL DISTRICT;
CAROLYN MCGUFFOG, SUPERINTENDENT
OF SCHOOLS; ROBIN LEVINE, DIRECTOR
OF PUPIL PERSONNEL; ROBERT
HENDRICKSON, FORMER INTERIM
PRINCIPAL OF CLARK SCHOOL/BOARD
PRESIDENT,

                      Defendants.
--------------------------------------------------------X

**OPINION AND ORDER**

18-cv-01790 (PMH)

       Defendants Greenburg-North Castle Union Free School District (the "District") and three individual defendants Superintendent of Schools Carolyn McGuffog ("McGuffog"), Director of Pupil Personnel Robin Levine ("Levine"), and former Interim Principal of Clark School Board/current Board President Robert Hendrickson ("Hendrickson") (collectively, "Defendants"), move to dismiss plaintiff Patrick Chidume's ("Plaintiff") Second Amended Complaint dated October 11, 2018. (Doc. 24, "SAC"). Plaintiff's SAC alleges that while he was a teacher in the District, he was subjected to race and national origin discrimination, retaliation, constructive discharge, defamation, and intentional and negligent infliction of emotional distress by Defendants.[1] This is the Defendants' second motion to dismiss the SAC pursuant to Fed. R. Civ. P. Rules 12(b)(2) and 12(b)(6).[2] For the reasons set forth below, Defendants' motion to dismiss is GRANTED in part and DENIED in part. The claims against McGuffog, Levine and Hendrickson

---

[1] The Court assumes familiarity with the facts set forth in detail in the Court's prior Opinion and Order. (*See* Doc. 34, "Op. & Order").

[2] Defendants were given permission to refile their submissions. Op. & Order at 11.

are dismissed in their entirety. The only claims that remain are Plaintiff's Title VII claims of retaliation and violation of 42 U.S.C. § 1983 insofar as asserted against the District, as more specifically set forth herein.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the pleaded [facts] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-pleaded factual allegations [in the complaint], a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-plead factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). However, the presumption of truth does not extend to "legal conclusions, and threadbare recitals of the elements of the cause of action." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. 662). A plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

## ANALYSIS

As an initial matter, with regard to Defendants' motion pursuant to Rule 12(b)(2), Plaintiff had until September 30, 2019 to effectuate service on Defendants. (*See*, Docs. 34, 41). As

Defendants indicate in their moving papers, at the time of their service of the instant motion, all Defendants except for Levine had been served with process. (*See* Doc. 46, "Defs.' Mem. of Law in Support" at 10; Docs. 36-39). As demonstrated by proof of service, Levine was personally served within the deadline set by the Court (*see* Doc. 42), and therefore this Court has personal jurisdiction over all Defendants. Accordingly, the branch of Defendants' motion seeking dismissal pursuant to Rule 12(b)(2) is denied. The Court will thus proceed with an analysis of the remaining branch of Defendants' motion pursuant to Rule 12(b)(6).

## I.    Plaintiff's First Claim for Relief (Title VII)

Defendants argue that the first claim for relief alleging a violation of Title VII by the District for race and national origin discrimination and for retaliation should be dismissed for failure to exhaust administrative remedies.

### A. Race and National Origin Discrimination

Annexed to Defendants' motion is the EEOC Notice of Charge of Discrimination and Plaintiff's verified complaint to the State Division of Human Rights ("NYSDHR") ("EEOC Charge"). (*See*, Doc. 45 "McGuffog Aff.", Ex. B).

In situations where exhaustion of administrative remedies is a prerequisite to bringing suit, a court may take judicial notice of the records and reports of the relevant administrative bodies, as well as the facts set forth therein. *Wilson v. New York City Police Dep't*, 09-CV-2632, 2011 WL 1215031, at *6 (S.D.N.Y. Feb. 4, 2011), *report and recommendation adopted*, 2011 WL 1215735 (S.D.N.Y. Mar. 25, 2011); *see also, Smart v. Goord,* 441 F.Supp.2d 631, 637–38 (S.D.N.Y.2006) (Sweet, D.J.), *amended in part,* 04-CV-8850, 2008 WL 591230 (S.D.N.Y. Mar. 3, 2008); *Dutton v. Swissport USA, Inc.,* 04-CV-3417, 2005 WL 1593969 at *1 n. 1 (E.D.N.Y. July 1, 2005). Thus, the EEOC Charge may properly be considered by the Court on this motion, as this is a situation

where exhaustion of administrative remedies is a prerequisite to bringing suit, and these documents are integral to Plaintiff's SAC. *See Wilson*, 2011 WL 1215031, at *6.

Defendants argue that Plaintiff merely checked off the boxes for race and national origin discrimination in the EEOC Charge, but in the factual recitation submitted in support of the charges, Plaintiff did not charge any of the Defendants with engaging in any acts of race or national origin discrimination. The Court agrees. The facts submitted by Plaintiff in support of the EEOC Charge solely assert that McGuffog had discriminated and retaliated against plaintiff for his exercise of his right as a union president to submit the group grievance which he had submitted to McGuffog on or about July 1, 2017. *See*, McGuffog Aff. Ex. B.  No allegations of race or national origin discrimination are forthcoming (except insofar as those boxes are checked) and the thrust of the EEOC Charge sounds in anti-union animus. *See*, *id*. Indeed, Plaintiff's EEOC Charge states, in relevant part, as follows:

> 4. The preponderance reason for this instant transmogrification lies in the fact that on June 1st, 2017, I did file a grievance on behalf of the 42 teaching assistants that she unlawfully terminated on May 9, 2017…

> 10. I am alleging that Ms. McGuffog has, for all intensive [sic] and practical purposes, engaged in acts of discrimination, harassment and retaliation against me for administering the collective bargaining agreement as union president. Moreover, she has engaged in "union busting" tactics with the explicit intention to intimidate, instill fears, discourage, punish and prevent me from exercising the right of an organized labor union. These unprofessional acts are in violation of both the school district policy #0111 (ANTI-HARASSMENT IN THE SCHOOL DISTRICT AND RETALIATION) and ARTICLE III (UNION RIGHTS), Item # "C" of the Collective Bargaining Agreement.

*Id*.

Exhaustion of administrative remedies "is ordinarily 'an essential element' of a Title VII claim," although "[c]laims not raised in an EEOC complaint ... may be brought in federal court if they are 'reasonably related' to the claim filed with the agency." *Williams v. N.Y.C. Hous. Auth.,*

458 F.3d 67, 70 (2d Cir. 2006) (quoting *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.,* 274 F.3d

683, 686 (2001)); *Butts v. City of New York Dep't of Hous. Pres. & Dev.,* 990 F.2d 1397, 1401 (2d

Cir. 1993), *superseded by statute on other grounds as stated in Hawkins v. 1115 Legal Serv. Care,*

163 F.3d 684, 693 (2d Cir. 1998); *see also Amin v. Akzo Nobel Chem., Inc.,* 282 F. App'x 958,

960–61 (2d Cir. 2008). As the Second Circuit has recognized, "[a] claim is considered reasonably

related if the conduct complained of would fall within the scope of the EEOC investigation which

can reasonably be expected to grow out of the charge that was made." *Fitzgerald v. Henderson,*

251 F.3d 345, 359–60 (2d Cir. 2001) (internal quotation marks omitted). The "central question" is

whether the EEOC Charge gave that "agency adequate notice to investigate discrimination on" the

bases alleged. *Mathirampuzha v. Potter,* 548 F.3d 70, 77 (2d Cir. 2008); *Williams v. New York

City Hous. Auth.,* 458 F.3d 67, 70 (2d Cir. 2006) (per curiam); *Deravin v. Kerik,* 335 F.3d 195,

202 (2d Cir. 2003). "Generally, courts dismiss claims that are so qualitatively different from the

allegations contained in an EEOC charge that an investigation would not likely encompass the new

allegations." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 469 (S.D.N.Y. 2011)

(citing *Mathirampuzha,* 548 F.3d at 74-78).

 "In this inquiry, 'the focus should be on the factual allegations made in the [EEOC] charge

itself, describing the discriminatory conduct about which a plaintiff is grieving.'" *Williams,* 458

F.3d at 70 (citing *Deravin,* 335 F.3d at 201).

As the Court further explained in *Wilson*:

> [I]t is well-settled that merely checking a box, or failing to check a box does
> not necessarily control the scope of the charge. The more critical analysis is
> whether there is any explanation or description supporting a particular claim.
> Just as a plaintiff would not be precluded from bringing a retaliation claim
> simply because he checked the wrong box on his administrative charge
> (provided that he alleged facts supporting such a claim), the fact that [plaintiff]
> checked the box for retaliation does not mean that he can now bring such a

claim in this action even though he alleged no facts in his administrative charge related to retaliation.

*Wilson*, 2011 WL 1215031, at *9.

Accordingly, Plaintiff's Title VII claims of discrimination based upon race and national origin are dismissed for failing to exhaust administrative remedies.

B. Retaliation

There are three separate bases of retaliation alleged in Plaintiff's SAC: (1) that Defendants retaliated against him for the exercise of his right as a union president to submit the group grievance which he had submitted to McGuffog on June 1, 2017; (2) that Defendants retaliated against him for filing the EEOC Charge (the filing with NYSDHR was made on July 27, 2017 and with the EEOC on August 1, 2017); and (3) that Defendants retaliated against him for commencing this action on February 27, 2018. SAC ¶¶ 16, 21-23, 31-32.

Plaintiff alleges that in retaliation for the filing of the group grievance, McGuffog involuntarily transferred Plaintiff from the Clark Academy on July 17, 2017, effective September 2017; in retaliation for filing the EEOC Charge, the District caused allegedly false allegations to be made against him with the New York State Justice Center in August of 2017; and in retaliation for filing the instant action, he was not paid during the February 2018 school break, subjected to a New York State Education Law § 913 examination, and that the District ceased paying him in May of 2018 thus forcing him to retire. *Id.*

1. Retaliation as Union President for the Filing of the Group Grievance on June 1, 2017

With regard to Plaintiff's allegations of retaliation for the exercise of his right as union president to submit the group grievance that he filed on June 1, 2017, there is no dispute that Plaintiff did "check the box" for retaliation, and alleged retaliation based upon the group grievance

6

he had filed in his EEOC Charge. *See* McGuffog Aff., Ex. B. Thus, exhaustion of administrative remedies would not be a bar to this allegation of retaliation.

In order to plead a prima facie claim of retaliation, "a plaintiff must allege that (1) he participated in a protected activity; (2) the employer knew of his protected activity; (3) he was subjected to an adverse employment action; and (4) there was a causal connection between the participation in the protected activity and the adverse employment action." *Ninying v. New York City Fire Dep't*, No. 19-1265, 2020 WL 1898818, at *2 (2d Cir. Apr. 17, 2020); *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010).

As to the "protected activity" element, "the plaintiff need only 'have had a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII.'" *See*, *e.g.*, *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 210 (2d Cir. 2006) (quoting *McMenemy v. City of Rochester,* 241 F.3d 279, 285 (2d Cir. 2001)). "He need not prove the underlying discrimination allegations." *Senno*, 812 F. Supp. 2d at 473; *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 91 (2d Cir. 2015) ("Retaliation occurs when an employer takes action against an employee not because of his ethnicity, but because he engaged in protected activity—complaining about or otherwise opposing discrimination.").

It is well settled that "[a] union grievance can constitute protected activity if it concerns discrimination, but union grievances that complain of matters other than discrimination do not constitute protected activity for purposes of Title VII." *Mack v. Paris Maint. Co. Inc.*, 14-CV-6955, 2016 WL 8650461, at *9 (S.D.N.Y. Feb. 22, 2016), *report and recommendation adopted*, 14-CV-6955, 2016 WL 1071030 (S.D.N.Y. Mar. 17, 2016); *Melie v. EVCI/TCI Coll. Admin.,* 374 F. App'x 150, 153 (2d Cir. 2010) ("[U]nion grievances that do not complain of discrimination do not constitute a protected activity—the first element of the *prima facie* case."); *Clemente v. New*

7

*York State Div. of Parole*, 01-CV-3945, 2004 WL 1900330, at *13 (S.D.N.Y. Aug. 24, 2004). The facts alleged by Plaintiff indicate that he filed a union grievance for violation of the collective bargaining agreement in abolishing a class of teaching assistant positions, but there is no indication that the grievance alleged discrimination. SAC ¶ 14. Therefore, the filing of the group grievance does not qualify as protected conduct under Title VII.[3]

Even if the filing of the grievance constitutes a protected activity, Plaintiff fails to allege facts that raise a plausible inference that he suffered any adverse employment action as a result of that filing. The inquiry for a retaliation claim is "whether the [alleged adverse action] to which [the plaintiff] was subjected could well have dissuaded a reasonable employee in his position from complaining of unlawful discrimination." *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 43–44 (2d Cir. 2019); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (inquiry is whether the action "could well dissuade a reasonable worker from making or supporting a charge of discrimination"); *Kessler*, 461 F.3d at 209; *Washington v. County of Rockland,* 373 F.3d 310, 320 (2d Cir. 2004).

---

[3] The Court recognizes that Plaintiff's pleading states that "[a]lmost all of these 42 teaching assistants are black or Hispanic. Superintendent McGuffog is Caucasian." SAC ¶ 14. However, Plaintiff does not allege that the group grievance he filed on June 1, 2017 "complained of discrimination," *see Melie,* 374 F. App'x at 153,  rather, he specifically states that he "filed a group grievance on behalf of 42 District teaching assistants, alleging that the District Superintendent violated the contract when she abolished the entire class of teaching assistant positions." SAC ¶ 14. Importantly, Plaintiff's EEOC Charge reference the group grievance but make no reference to the grievance having concerned or complained of discrimination. Although Plaintiff's pleading raises an inference that the union grievance complained of discrimination, where his EEOC Charge fails to so state, even the principle of loose pleading cannot bridge the gap. *Mathirampuzha*, 548 F.3d at 76 ("[W]e do not think that [the] recognized principle of 'loose pleading' can be stretched to bridge the gap between the allegations asserted in the plaintiff's EEO complaint and the claims he raises in this civil action." (citation and internal quotation marks omitted)). Where, as here, the allegations in the EEOC Charge are so qualitatively different from those in the civil complaint, the claim must be dismissed. *Senno*, 812 F. Supp. 2d at 469. Simply put, plaintiffs may not convert the theory of discrimination alleged in the EEOC filing to a new and different theory when their complaint is filed in the civil action. As an example, courts would not permit a racial discrimination claim to proceed when the EEOC charge alleged national origin discrimination -- no different than the instant case, in which a "union-busting"  EEOC Charge may not proceed as a race and national origin claim in the SAC filed in this Court. *See id.* at 469-70 (citing *Solomon–Lufti v. Roberson,* 97-CV-6024, 1999 WL 553733, at *4 (S.D.N.Y. July 29, 1999)).

An adverse employment action is one that "would deter a similarly situated individual of ordinary firmness from exercising his or her . . . rights." *Washington* 373 F.3d at 320 (internal quotation omitted); *see also Burlington N. & Santa Fe Ry. Co.* at 68(plaintiff must show the challenged action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.").

Plaintiff's allegation concerning the transfer to the Greenburgh Academy in Yonkers on July 17, 2017, effective September of 2017, does not constitute an adverse employment action where, as here, there are no, much less sufficient, allegations as to the prestige of the school or that it is materially less suited to his skills and expertise, or "whether the reassignment to which he was subjected could well have dissuaded a reasonable employee in his position from complaining of unlawful discrimination." *See*, *e.g.*, *Kessler*, 461 F.3d at 209; *see also Sackey v. City of New York*, 04-CV-2775, 2006 WL 337355, at *9 (S.D.N.Y. Feb. 15, 2006), *aff'd*, 293 F. App'x 89 (2d Cir. 2008) (holding that being moved to a comparable, but less desirable desk cannot by itself provide the basis for a discrimination claim). The record here simply does not allege any basis for the conclusion that the transfer would dissuade a reasonable employee from complaining of unlawful discrimination.

    2.   <u>Retaliation for Filing the EEOC Charge on July 27, 2017 and August 1, 2017; and</u>

    3.   <u>Retaliation for Commencing this Action on February 27, 2018</u>

With respect to Plaintiff's allegations of retaliation for filing the EEOC Charge in July and August 2017 and commencing this action on February 27, 2018, Plaintiff could not have "checked the box" for such retaliation, as the retaliatory actions alleged occurred after the filing of the EEOC Charge. Plaintiff alleges that after filing the EEOC Charge, Justice Center investigators informed Plaintiff that he was being investigated for allegedly "inappropriately [telling] students that a man

has a 'right' to rape his wife." SAC ¶ 23. Plaintiff further alleges that subsequent to the issuance

of the right-to-sue letter on December 11, 2017 (SAC, Ex. A), and after commencing this action

on February 27, 2018, he was not paid during the February 2018 school break, was required to

submit to an Education Law § 913 examination, and that the District stopped paying him in May

2018. SAC ¶¶ 31-34.

As explained above, jurisdiction exists over Title VII claims only if they have been

included in an EEOC charge or are "reasonably related" to that alleged in the EEOC charge. *Butts*,

990 F.2d at 1401-04. The Second Circuit has recognized three situations in which claims not raised

in an EEOC charge are reasonably related: "1) where the conduct complained of would fall within

the scope of the EEOC investigation which can reasonably be expected to grow out of the charge

of discrimination; 2) where the complaint is one alleging retaliation by an employer against an

employee for filing an EEOC charge; and 3) where the complaint alleges further incidents of

discrimination carried out in precisely the same manner alleged in the EEOC charge." *Terry v.

Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003) (citing *Butts*, 990 F.2d at 1402–03 (2d Cir.1993)); *see

also Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002).

"[I]f a plaintiff has already filed an EEOC charge, we have been willing to assume that the

exhaustion requirement is also met for a subsequent claim 'alleging retaliation by an employer

against an employee for filing an EEOC charge.'" *Duplan v. City of New York,* 888 F.3d 612, 622

(2d Cir. 2018) (*citing Terry*, 336 F.3d at 151 (2d Cir. 2003)).

The Court in *Duplan* explained:

> In the paradigmatic case for which the "reasonably related" doctrine was
> adopted, retaliation occurs while the EEOC charge is still pending before the
> agency. It is well established that the plaintiff may then sue in federal court on
> both the adverse actions that gave the impetus for the initial EEOC charge and
> the retaliation that occurred thereafter, even though no separate or amended
> EEOC charge encompassing the subsequent retaliation was ever filed. *See*

10

*Owens v. N.Y.C. Hous. Auth.*, 934 F.2d 405, 410–11 (2d Cir. 1991). That result stems from several considerations. Most straightforwardly, the ongoing EEOC investigation on the first charge would be expected to uncover and address any related retaliation. *See Butts*, 990 F.2d at 1402. Forcing the parties into two concurrent agency proceedings is also unlikely to produce "the princip[al] benefits of EEOC involvement, [namely,] mediation of claims and conciliation." *Id.* Moreover, "requiring a plaintiff to file a second EEOC charge under these circumstances could have the perverse result of promoting employer retaliation in order to impose further costs on plaintiffs and delay the filing of civil actions relating to the underlying acts of discrimination." *Id.* In addition, some plaintiffs might be effectively deterred from filing additional EEOC complaints if they suffered severe retaliation as a result of their initial claim. *Terry*, 336 F.3d at 151.

But we have also applied the "reasonably related" doctrine to retaliation that occurs after the EEOC investigation is complete, even though the rationale that the retaliation likely was or should have been encompassed by the EEOC investigation is not available in such cases. For instance, in *Malarkey v. Texaco, Inc.*, 983 F.2d 1204 (2d Cir. 1993), we observed that so long as the retaliation at issue occurred after the filing of the initial EEOC complaint, there was "no reason why a retaliation claim must arise before administrative proceedings terminate in order to be reasonably related" to the initial claim for exhaustion purposes. *Id.* at 1209.

*Duplan,* 888 F.3d at 622-23.

Simply put, "[a] claim is 'reasonably related' to an EEOC charge when it alleges retaliation for the filing of the EEOC charge." *Senno*, 812 F. Supp. 2d at 470.

Reading Plaintiff's pleading with the required liberality, Plaintiff's SAC alleges that the: (1) Justice Center investigation on August 15, 2017, (2) failure to pay Plaintiff for the February 2018 school break, (3) demand for an Education Law § 913 examination in May 2018, and (4) failure to pay Plaintiff in May 2018 were acts of retaliation against Plaintiff for filing the EEOC Charge in July and August 2017, and for commencing this action in February 2018, and are therefore reasonably related to such filings. *See Legnani v. Alitalia Linee Aeree Italiane, S.P.A*, 274 F.3d 683, 686 (2d Cir. 2001). Accordingly, the Court must consider whether Plaintiff's factual

11

allegations plausibly allege adverse employment action and causation as each relates to Plaintiff's Title VII retaliation claim to the extent that they relate to events that occurred after the filing of his initial EEOC Charge on July 27, 2017 and August 1, 2017. See, e.g., *Pierre v. New York State Dep't of Corr. Servs.*, 05-CV-0275, 2009 WL 1583475, at *9 (S.D.N.Y. June 1, 2009).

    i)    <u>Retaliation for filing EEOC Charge -- Justice Center Investigation in August of 2017</u>

District courts in this Circuit have disagreed as to whether, in the retaliation context, an investigation may suffice to establish an adverse employment action. Some courts have found that the commencement of an investigation, even without attendant negative consequences, is sufficient to establish an adverse employment action. *See Weber v. City of New York*, 973 F. Supp. 2d 227, 269–70 (E.D.N.Y. 2013) (collecting cases). Because the commencement of a Justice Center investigation might "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights," the Court assumes for the purposes of this motion that the commencement of the Justice Center investigation was an adverse employment action. *Washington,* 373 F.3d at 320; *Burlington N. & Santa Fe Ry. Co*., 548 U.S. at 68.

"However, for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90–91 (2d Cir. 2015) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 570 U.S. 338, 360 (2013)). "But-for" causation does not require proof that retaliation was the only cause of the employer's action, but "[i]t is not enough that retaliation was a substantial or motivating factor in the employer's decision." *Id*. The plaintiff must show "that the adverse action would not have occurred in the absence of the retaliatory motive." *Id*. (citing *Zann Kwan v. Andalex Grp. LLC,* 737 F.3d 834, 846 (2d Cir. 2013)).

Plaintiff alleges that after filing the EEOC Charge, in August 2017, he was made aware that he was the subject of an allegation from the District that he inappropriately told students that a man has a "right" to rape his wife. SAC ¶ 23. Plaintiff allegedly explained that a man's "right" to rape his wife was in fact discussed, albeit in the context of a social studies lesson about foreign cultures. *Id*. Thus, Plaintiff's allegations concerning the Justice Center investigation demonstrate that Defendants' alleged retaliation was not the "but-for" cause of the investigation; rather, it appears that the comments he admitted to making in the context of the social studies lesson gave rise to the investigation, and that the  investigation was later closed and deemed "unsubstantiated." *Id*. ¶ 28.

ii)     Retaliation After Filing this Action -- Failure to Pay for the February 2018 School Break, Demand for Education Law § 913 Examination, and Failure to Pay in May 2018

Plaintiff further alleges that he was not paid for the February 2018 school break, improperly subjected to an Education Law § 913 examination, and that Defendants ceased paying him in May 2018. Defendants submit a number of documents with their motion and, with respect to the sole issue of "whether the February 2018 winter break salary payment constituted an adverse action," ask the Court to convert that portion of their instant motion to one for summary judgment.  (Doc. 48, "Defs. Mem. of Law in Reply" at 8).

On a motion to dismiss, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, [as well as] documents 'integral' to the complaint and relied upon in it." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *see Manley v. Utzinger*, 10-CV-2210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) ("The Court may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which the plaintiff relied in bringing the suit.").

Even if a document is not incorporated by reference into the complaint, the Court may still consider such document "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.2d 391, 398 (2d Cir. 2006)); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also*, *Perry v. Mary Ann Liebert, Inc.*, 17-CV-5600 , 2018 WL 2561029, at *4 (S.D.N.Y. June 4, 2018), *aff'd*, 765 F. App'x 470 (2d Cir. 2019). "A plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (emphasis in original).

Where a document is not attached to the complaint or integral thereto such that it can be considered on a motion to dismiss, a district court must either "exclude the additional material and decide the motion on the complaint alone" or "convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (quoting *Fonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir. 1988)); *see also* Fed. R. Civ. P. 12(d).

In particular, the documents proffered by Defendants on this motion include pay stubs for the period in question, the school district's calendar for that time period, the plaintiff's attendance detail report, a screen shot from the District's time recording program, a letter sent to Plaintiff pursuant to Education Law § 913, and a letter notifying Plaintiff that the District was stopping his pay effective May 25, 2018. *See* McGuffog Aff., Exs. D-G, I, J. At this stage of the proceedings in the instant case, the Court declines to convert Defendants' motion to dismiss to a motion for

14

summary judgment as regards payment for the February 2018 school break. The Court finds that Plaintiff has plausibly alleged that in retaliation for filing the instant action in February 2018, the District failed to properly pay Plaintiff during the February 2018 school break.[4]

As regards Plaintiff's allegations concerning the demand in May 2018 to submit to an Education Law § 913 examination and the resulting cessation of his payroll in May 2018, the Court need not convert the motion and may consider the letters annexed to Defendants' motion as integral to Plaintiff's pleading. Plaintiff references and describes the contents of the letter dated April 27, 2018 in his pleading. SAC ¶ 32.

"New York law specifically provides that a Board of Education is 'empowered to require any person employed by the board . . . to submit to a medical examination to determine the physical . . . capacity of such person to perform . . . her duties.'" *Kane v. Carmel Cent. Sch. Dist.*, 12-CV-5429, 2014 WL 7389438, at *8 (S.D.N.Y. Dec. 15, 2014) (citing N.Y. Edu. L. § 913). Nonetheless, the Court concludes that Plaintiff has plausibly alleged conduct that might "deter a similarly situated individual of ordinary firmness from exercising his or her . . . rights." *Washington*, 373 F.3d at 320; *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68; *see also Payson v. Bd. of Educ. of Mount Pleasant Cottage Sch., USFD*, 14-CV-9696, 2017 WL 4221455, at *20 (S.D.N.Y. Sept. 20, 2017).

Accordingly, Defendants' motion to dismiss the first claim for relief is granted in part, and denied as to the alleged retaliation which occurred in February and May 2018.

---

[4] The Court recognizes that Plaintiff may have had possession and/or notice of at least some of the documents concerning payment and sick days in January through March 15, 2018, (McGuffog Aff., Exs. D-G), however, he disputes their authenticity, and the Court cannot unequivocally determine that he relied upon them in drafting the SAC. As such, they are not considered on the instant motion to dismiss. The Court notes, however, that it will not look favorably upon Plaintiff's hiding behind these procedural vehicles or any gamesmanship on his part if Plaintiff in fact knew he was properly paid for the February 2018 school break; when the Court does consider such documents, it will separately consider the extent to which Plaintiff actually knew about those documents before filing the SAC.

II.    Plaintiff's Second Claim for Relief (42 U.S.C. § 1981)

Defendants argue that Plaintiff's second claim for relief should be dismissed because a cause of action for damages under 42 U.S.C § 1983 is the exclusive federal remedy for alleged violation of rights guaranteed in 42 U.S.C. § 1981 by state governmental units or state actors. The Second Circuit has held that section 1981 does not apply to state actors. *Duplan,* 888 F.3d at 661. *Duplan* has been applied both to claims against the municipality and individual municipal defendants. *Gonzalez v. City of New York*, 377 F. Supp. 3d 273, 285 (S.D.N.Y. 2019). Moreover, section 1981 claims cannot proceed against the individual defendants in their individual capacities. *Id.* (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989) and *Whaley v. City Univ. of New York*, 555 F. Supp. 2d 381, 400-01 (S.D.N.Y. 2008)).

Accordingly, Plaintiff's second claim for relief is dismissed in its entirety.

III.    Plaintiff's Third Claim for Relief (42 U.S.C. § 1983 - First Amendment)

Plaintiff's third claim for relief alleges First Amendment retaliation against all Defendants predicated upon the same conduct alleged with respect to Plaintiff's Title VII claim. The SAC alleges that "Defendants, through the aforementioned conduct, have violated 42 U.S.C. Section 1983, by retaliating against Plaintiff by advocating for other members as a Union President in violation of the First Amendment. The individual defendants are sued both in their official and individual capacities on this claim." SAC ¶ 44.  Defendants argue that McGuffog, Levine, and Hendrickson are shielded from liability on this claim under the doctrine of qualified immunity. The Court agrees.

While qualified immunity is ordinarily an affirmative defense asserted in an answer, a defendant can properly raise a qualified immunity defense in a pre-answer 12(b)(6) motion to dismiss. *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004); *Bloomingburg Jewish Educ. Ctr.*

16

*v. Vill. of Bloomingburg*, 111 F. Supp. 3d 459, 493 (S.D.N.Y. 2015) ("In order for the doctrine of qualified immunity to serve its purpose, the availability of qualified immunity should be decided 'at the earliest possible stage in litigation.'" (quoting *Hunter v. Bryant,* 502 U.S. 224, 227 (1991))). A 12(b)(6) motion based on qualified immunity may be granted if "the facts supporting the defense appear on the face of the complaint." *Hyman v. Abrams*, 630 F. App'x 40, 42 (2d Cir. 2015) (quoting *McKenna*, 386 F.3d at 435–36). A defendant bears the burden of establishing that he is entitled to qualified immunity. *Gardner v. Murphy*, 613 F. App'x 40, 41 (2d Cir. 2015) (citing *Vincent v. Yelich,* 718 F.3d 157, 166 (2d Cir. 2013)).

Consequently, when a defendant raises a qualified immunity defense in a 12(b)(6) motion to dismiss, the defendant must accept that "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Hyman*, 630 App'x at 42 (quoting *McKenna*, 386 F.3d at 436).

The doctrine of qualified immunity protects officials from liability for civil damages when, "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport,* 479 F.3d 196, 211 (2d Cir. 2007)). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 59 (2d Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). If an official's belief that his or her action does not violate clearly established law is "objectively reasonable," he or she is shielded from liability by qualified immunity. *Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 608 (S.D.N.Y. 2013); *see also Ashcroft*, 563 U.S. at 743

("[Q]ualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments . . . [and] it protects 'all but the plainly incompetent or those who knowingly violate the law.'") (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"When a plaintiff brings a claim against an individual state actor under Section 1983 for violating the plaintiff's constitutional rights, the state actor 'is entitled to have the action dismissed on the basis of qualified immunity if at the time of the challenged conduct there was no clearly established law that such conduct constituted a constitutional violation.'" *Payson*, 2017 WL 4221455, at *27 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Defendants correctly point out that the Second Circuit's decision in *Montero v. City of Yonkers*, 890 F.3d 386 (2d Cir. 2018), was decided after the conduct complained of Defs. Mem. of Law in Support at 19-20; Plaintiff counters that the decision in *Payson*, 2017 WL 4221455, demonstrates that the law was sufficiently settled as to whether the union grievance constituted speech as a private citizen on a matter of public concern so as to render it clearly established as protected by the First Amendment. Pl.'s Mem. in Opp. at 20. The Court's decision in *Payson*, however, was also decided after much of the conduct complained of in this action. Further, Plaintiff does not cite to Supreme Court or Second Circuit precedent that clearly established the law as concerns the conduct alleged in Plaintiff's First Amendment claim except *Montero*. It was thus not clearly established whether Plaintiff's union advocacy at the time of Defendants' alleged retaliation was protected under the First Amendment, and the individual Defendants McGuffog, Levine, and Hendrickson are therefore entitled to qualified immunity on this claim.

As regards the District, however, "[q]ualified immunity applies only to a plaintiff's claim against an individual state actor for damages. It has no application when the suit is brought against a municipality, nor when the suit seeks injunctive relief." *Lynch*, 811 F.3d at 579 n.11.

18

Thus, as to Plaintiff's 1983 claim against the District, "[w]here… a plaintiff claims that he or she was retaliated against in violation of the First Amendment, he or she must plausibly allege that '(1) his [or her] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against him [or her]; and (3) there was a causal connection between this adverse action and the protected speech.'" *Montero*, 890 F.3d at 394.

> [T]he First Amendment inquiry must proceed in two parts. 'The first [component] requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech.' *Garcetti*, 547 U.S. at 418, 126 S.Ct. 1951 (citations omitted). If the first component is present, an employer must then show that it 'had an adequate justification for treating the employee differently [based on his or her speech] from any other member of the general public.' *Id.* (citing *Pickering*, 391 U.S. at 568, 88 S.Ct. 1731).

*Id.*

Union advocacy representation on behalf of other members qualifies as conduct as a private citizen and may be protected under the First Amendment. *Payson,* 2017 WL 4221455. Plaintiff's claim of retaliation in violation of the First Amendment fails, however, as regards the transfer to the Greenburgh Academy for the same reasons as Plaintiff's Title VII claim. *See Manon v. Pons*, 131 F. Supp. 3d 219, 232 (S.D.N.Y. 2015) ("The standard for an 'adverse action' in the context of First Amendment retaliation is substantially similar to the same inquiry in the Title VII retaliation context); *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 225–27 (2d Cir. 2006) ("[R]etaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action.").

With respect to the investigation by the Justice Center in August of 2017, the failure to pay Plaintiff during the February 2018 school break, requiring a New York State Education Law § 913 examination in April 2018, and the cessation of payment in May 2018, the Court finds Plaintiff's

allegations plausible to establish the causal connection between the adverse action and the protected speech.

"[T]o establish causation on a First Amendment retaliation claim, a plaintiff 'must show a connection sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action.'" *Payson*, 2017 WL 4221455, at *13 (citing *Zehner v. Jordan-Elbridge Bd. of Educ.*, 666 F. App'x 29, 31 (2d Cir. 2016)). "In this Circuit, a plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by 'showing that the protected activity was closely followed in time by the adverse [employment] action.'" *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545, 554 (2d Cir. 2001).

Although Defendants argue that two months is the dividing line for causation (Defs. Mem. of Law in Support at 19, n.13), the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman-Bakos*, 252 F.3d at 554 (collecting cases); *see also Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (six months not too long). Where, as here, the alleged adverse action occurred in response to the filing of the EEOC Charge and the instant litigation, there is adequate "temporal proximity" to find causation. *See Cruz v. Lee*, 14-CV-4870, 2016 WL 1060330, at *7 (S.D.N.Y. Mar. 15, 2016) (finding "close temporal proximity" where adverse action occurred during the pendency of the plaintiff's lawsuit); *see also Lindner v. Int'l Business Machines Corp.*, 06-CV-4751, 2008 WL 2461934, at *7 (S.D.N.Y. June 18, 2008) (noting that "retaliation claims are rarely dismissed pursuant to Rule 12(b)(6) where the plaintiff has alleged a time period of less than one year between the protected activity and the alleged retaliatory conduct"). Here, the filing of the union

grievance on June 1, 2017 and the alleged retaliatory action taken in February and May 2018, occurred within one year.

Accordingly, the Court finds Plaintiff's allegations plausible to satisfy a First Amendment retaliation claim against the District.

IV.    <u>Plaintiff's Fourth Claim for Relief (NYSHRL)</u>

With respect to Plaintiff's fourth claim for relief complaining of race and national origin discrimination under the New York State Human Rights Law ("NYSHRL") against all Defendants, the prerequisite exhaustion of administrative remedies applicable to Title VII claims is not applicable to NYSHRL claims. *Ross-Caleb v. City of Rochester*, 512 F. App'x 17 (2d Cir. 2013). However, to allow Plaintiff to proceed on those identical state claims after the Court has dismissed the corresponding Title VII claims due to Plaintiff's failure to exhaust "would essentially allow [Plaintiff] to get the claims into this Court through the courthouse's back door." *Wurtzburger v. Koret*, 16-CV-7897 (KMK), 2018 WL 2209507, at *6 (S.D.N.Y. May 14, 2018). Thus, Plaintiff's NYSHRL claims for race and national origin discrimination are also dismissed.

Plaintiff's NYSHRL claims of retaliation for the transfer to the Greenburgh Academy in July 2017 and the Justice Center investigation in August 2017 are dismissed for the same reasons as his Title VII claims alleging same. *Rojas v. Roman Catholic Diocese of Rochester,* 660 F.3d 98, 107 n.10 (2d Cir. 2011) (standards for liability under Title VII and NYSHRL are coextensive, and analytically identical to each other); *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 403 (S.D.N.Y. 2014) (same).

Plaintiff's remaining allegations of retaliation in his NYSHRL claim are also dismissed because Plaintiff failed to comply with the mandatory statutory prerequisites pursuant to New York State Education Law § 3813(1). *Rodriguez v. Int'l Leadership Charter Sch.*, 08-CV-1012, 2009

21

WL 860622, at *5 (S.D.N.Y. Mar. 30, 2009) ("[F]ulfillment of the statutory requirements for filing a notice of claim is a condition precedent to bringing an action against a school district or a board of education and, moreover, failure to present a claim within the statutory time limitation ... is a fatal defect." (quotation omitted)).

Although the Second Circuit has not yet opined dispositively on the issue, various district courts in this Circuit have considered the necessity of a notice of claim as a precondition to suit under the NYSHRL. Judge Seibel analyzed this issue in a thorough and well-reasoned decision, concluding that notice is required under Education Law § 3813(1). *See Berrie v. Bd. of Educ. of Port Chester-Rye Union Free Sch. Dist.*, 14-CV-6416, 2017 WL 2374363 (S.D.N.Y. May 31, 2017), *aff'd*, 750 F. App'x 41 (2d Cir. 2018). The plain reading of the statute, she found, requires a written verified claim and a complaint does not suffice to meet the statutory requirements. *Id*.

My plain reading of the statute makes clear that there are four elements in the statute that are prerequisites to prosecuting and maintaining a NYSHRL lawsuit against Defendants herein: 1) "it shall appear by and as an allegation in the complaint" that, 2) "a written verified claim," 3) "was presented to the governing body of said district or school within three months after the accrual of such claim", and 4) that "the officer or body having the power to adjust or pay said claim" has not made "an adjustment or payment thereof for thirty days after such presentment." N.Y. Educ. L. § 3813(1).

The alleged retaliatory events at issue are the failure to pay Plaintiff for the February 2018 school break, the requirement of an Education Law § 913 examination in May 2018, and the resulting cessation of his pay in May 2018. These alleged retaliatory events were not set forth in Plaintiff's EEOC Charge on July 27, 2017 and August 1, 2018 (*see* McGuffog Aff., Ex. B); they

were not set forth in his Notice of Claim on November 21, 2018 (*see* McGuffog Aff., Ex. C);[5] and

they were not set forth in the original complaint he filed in this Court on February 27, 2018 (*see*

Doc. 1).[6]

Plaintiff's first amended complaint filed September 27, 2018, however, does contain

allegations concerning these alleged retaliatory events. (Doc. 21). The SAC filed on February 27,

2018 that is the subject of this motion likewise contains these allegations. *See* SAC ¶¶ 31-34.

However, the complaints filed in this action cannot form the basis for compliance with the statute

because in order to comply with Education Law § 3813(1), the requisite statutory events

necessarily had to have preceded the filing of a complaint in order to be alleged therein. *See Berrie*,

2017 WL 2374363, at *8-9, n.13.

Here, the accrual of Plaintiff's claim occurred in February 2018 following the school break

for which he alleges he was not properly paid, subsequent to the commencement of this action,

SAC ¶ 31; Pl.'s Mem. in Opp. at 5, on April 27, 2018, when he was requested to submit to an

Education Law ¶ 913 examination, SAC ¶ 32, and again on May 30, 2018, when the District ceased

paying him, *id.* ¶¶ 33-34.  Even were the Court to consider the first amended complaint filed on

September 27, 2018 or the SAC filed on October 11, 2018, the retaliatory events referenced are

outside the relevant statutory time period: Plaintiff's NYSHRL claim would be limited to the

---

[5] The Notice of Claim was a document that Plaintiff indisputably had in his possession and had knowledge of, and upon which he relied in bringing suit; the Notice was integral to his pleading of state law claims. *See* SAC ¶ 30; Pl.'s Mem. in Opp. at 5, 20-21. Thus, the Court may consider the Notice of Claim on the motion to dismiss. *See, e.g.*, *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d at 48.

[6] The Court may consider Plaintiff's original complaint and first amended complaint on this motion because, although Plaintiff's SAC is "the operative pleading and the object of Defendant[s'] motion, superseding all earlier filed complaints, Plaintiff's initial and first amended complaints are properly considered by the court when evaluating the plausibility of [his] claims." *Perry v. Mary Ann Liebert, Inc.*, No. 17-CV-5600, 2018 WL 2561029, at *4 (S.D.N.Y. June 4, 2018), *aff'd*, 765 F. App'x 470 (2d Cir. 2019) (citing *Griffin v. Alexander*, No. 09-CV-1334, 2011 WL 4402119, at *2 n.4 (N.D.N.Y. Aug. 25, 2011); *Williams v. Pepin*, No. 09-CV-1258, 2011 WL 7637552, at *1 n.4 (N.D.N.Y. Dec. 23, 2011) (earlier complaint may be properly considered on motion to dismiss).

period of June 27, 2018–October 11, 2018. N.Y. Educ. L. § 3813(1); *Berrie*, 2017 WL 2374363, at *8-9.

Simply put, the SAC does not allege that a written verified claim was presented to the governing body of the District within three months of the accrual of the alleged retaliatory events and that thirty days have elapsed since such presentment without adjustment or payment thereof. *See* N.Y. Educ. L. § 3813(1).

Accordingly, Plaintiff's fourth claim for relief is dismissed in its entirety.

    V.    <u>Plaintiff's Fifth Through Seventh Claims for Relief (State Law Claims)</u>

Plaintiff's fifth through seventh claims for relief allege state law claims for defamation, intentional and negligent infliction of emotional distress, and tortious interference with contract/prima facie tort.

### A. <u>Defamation</u>

With regard to his claim of defamation, the Plaintiff must allege: "(1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on the part of the publisher; (4) that either constitutes defamation per se or caused special damages." *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010) (internal quotations omitted). "A defamation claim is only sufficient if it adequately identifies the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated." *Id.* (internal quotations omitted).  Under the liberal pleading standards of Fed. R. Civ. P. 8, "this requires a plaintiff to 'identify the allegedly defamatory statements, the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published.'" *Alvarado*

*v. Mount Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 790 (S.D.N.Y. 2019) (citing *Neal v. Asta Funding, Inc.*, 13-CV-2176, 2014 WL 3887760, at *3 (S.D.N.Y. June 17, 2014)).

"[U]nder New York law, pure opinion is not actionable because expressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation.'" *Ratajack v. Brewster Fire Dep't, Inc. of the Brewster-Se. Joint Fire Dist.*, 178 F. Supp. 3d 118, 158 (S.D.N.Y. 2016) (internal citations and quotations omitted). "It is a question of law whether the disputed statements in a defamation claim are 'of fact, which may be defamatory, [or] expressions of opinion, which are not.'" *Mirage Entm't, Inc. v. FEG Entretenimientos S.A.*, 326 F. Supp. 3d 26, 36–37 (S.D.N.Y. 2018) (citing *Live Face on Web, LLC v. Five Boro Mold Specialist Inc.*, 2016 WL 1717218, at *2 (S.D.N.Y. Apr. 28, 2016)).

Plaintiff alleges that "[o]n July 5, 2017, the current union president Anthony Nicodemo informed Plaintiff that [McGuffog] had indicated to him that [McGuffog] did not like Plaintiff and that she found his accent repugnant. [McGuffog] also confided in Mr. Nicodemo that she could not understand how Plaintiff was elected Union President in a school district that has a staff of about 80% Caucasians." SAC ¶ 19.  The Court finds that these statements are expressions of opinion, which are not actionable, no matter how offensive they may be. *Ratajack*, 178 F. Supp. 3d at 158. In any event, Plaintiff fails to sufficiently allege when the statements were allegedly uttered by McGuffog to Mr. Nicodemo.

Plaintiff further alleges that "McGuffog has defamed Plaintiffs character to other teachers in the District by blaming the lack of a salary increase to the cost of litigation Plaintiff commenced against the District." SAC ¶ 49.  Plaintiff alleges that he "came to learn" that "Levine and [] Hendrickson coerced students to make false and damaging statements about Plaintiff that had ultimately been called into the Justice Center," SAC ¶ 24, and that Defendants "spread false rumors

about him," SAC ¶ 50.  Plaintiff's pleading fails to set forth the defamatory statements allegedly made; moreover, the pleading does not identify the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published.  *Alvarado*, 404 F. Supp. 3d at 790.

Accordingly, Plaintiff's fifth cause of action for defamation is dismissed.

## B. Intentional and Negligent Infliction of Emotional Distress

Plaintiff's sixth claim for relief alleges intentional and negligent infliction of emotional distress against McGuffog, Levine, and Hendrickson. To plead a claim for intentional infliction of emotional distress under New York law, plaintiff must allege: "(1) extreme and outrageous conduct, measured by the reasonable bounds of decency tolerated by society; (2) intent to cause or disregard of a substantial probability of causing severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Margrabe v. Sexter & Warmflash, P.C.*, 353 F. App'x 547, 550 (2d Cir. 2009). "The conduct alleged 'must consist of more than mere insults, indignities and annoyances.'" *Id*. (citing *Leibowitz v. Bank Leumi Trust Co. of New York,* 548 N.Y.S.2d 513, 521 (N.Y. App. Div. 1989)).

"Likewise, a plaintiff alleging negligent infliction of emotional distress must plead 'conduct that was so outrageous and extreme as to support a claim for emotional distress.'" *Brevil v. Cty. of Rockland*, 15-CV-5103, 2017 WL 4863205, at *9 (S.D.N.Y. Oct. 26, 2017) (citing *Acquista v. New York Life Ins. Co.*, 730 N.Y.S.2d 272, 279 (N.Y. App. Div. 2001)). "Whether the conduct alleged may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999).

Where, as here, a plaintiff premises an intentional infliction of emotional distress claim on discrimination, harassment, or retaliation in the employment context, New York courts are particularly reluctant to find that such conduct is sufficiently extreme or outrageous. *Fertig v. HRA Medical Assistance Program,* 10–CV–8191, 2011 WL 1795235, at *6 (S.D.N.Y. May 6, 2011); *Gioia v. Forbes Media LLC,* 09–CV–6114, 2011 WL 4549607, at *12 (S.D.N.Y. Sept. 30, 2011) ("[C]ourts within this circuit have generally found allegations of discrimination, wrongful termination, and denial of benefits insufficient to satisfy the rigorous standard for extreme and outrageous conduct.") (collecting cases); *Semper v. New York Methodist Hosp.,* 786 F.Supp.2d 566, 587 (E.D.N.Y. 2011) ("Acts which merely constitute harassment, disrespectful or disparate treatment, a hostile environment, humiliating criticism, intimidation, insults or other indignities fail to sustain a claim of [intentional infliction of emotional distress] because the conduct alleged is not sufficiently outrageous.") (internal quotation marks and citations omitted); *Emmons v. City Univ. of New York,* 715 F.Supp.2d 394, 424 (E.D.N.Y. 2010) ("As a general proposition, adverse employment actions, even those based on discrimination, are not sufficient bases for intentional infliction claims.").

Courts can and frequently do dismiss intentional infliction of emotional distress claims in a pre-answer motion where the conduct alleged, even accepted as true, is not sufficiently outrageous as a matter of law. *Schaer v. City of New York,* 09–CV–7441, 2011 WL 1239836, at *7 n. 4 (S.D.N.Y. Mar. 25, 2011) (stating that intentional infliction of emotional distress is "an extremely disfavored cause of action under New York law that is routinely dismissed on pre-answer motion"); *see also, e.g., Stuto,* 164 F.3d at 827 (affirming dismissal of an intentional infliction of emotional distress claim on a Rule 12(b)(6) motion where the plaintiff failed to allege conduct that was sufficiently extreme and outrageous); *Semper,* 786 F.Supp.2d at 587 (dismissing

on a Rule 12(b)(6) motion the plaintiff's intentional infliction of emotional distress claim based on allegations in the employment context including a failure to promote, discrimination, retaliation, harassment, and termination because the plaintiff failed to show that the allegations rose to the "necessary level of outrageousness to sustain her claim"). Accordingly, Plaintiff's claim of intentional inflectional of emotional distress is dismissed.

The Second Circuit has explained that under New York State law, a plaintiff may maintain a claim for negligent infliction of emotional stress under either of two theories—the "bystander" theory or the "direct duty" theory. Under the "bystander" theory a plaintiff may recover for "purely emotional injury" when "(1) [ ]he is threatened with physical harm as a result of defendant's negligence; and (2) consequently [ ]he suffers emotional injury from witnessing the death or serious bodily injury of a member of [his] immediate family." *Mortise v. United States,* 102 F.3d 693, 696 (2d Cir.1996) (citing *Bovsun v. Sanperi,* 61 N.Y.2d 219, 230–31 (1984)). Plaintiff has set forth no factual basis permitting recovery under the "bystander" theory.

Under the "direct duty" theory, a plaintiff may recover "if [ ]he suffers an emotional injury from defendant's breach of a duty which unreasonably endangered [his] own physical safety." *Id.* (citing *Kennedy v. McKesson Co.,* 58 N.Y.2d 500, 504 (1983)). "The duty in such cases must be specific to the plaintiff, and not some amorphous, free-floating duty to society." *Id.* (citing *Johnson v. Jamaica Hosp.,* 62 N.Y.2d 523, 526–27 (1984)). Plaintiff has not made any allegations satisfying these requirements. Accordingly, Plaintiff's claim of negligent infliction of emotional distress is dismissed.

## C. Tortious Interference with Contract/Prima Facie Tort

"Under New York law, the elements of tortious interference with contract are (1) 'the existence of a valid contract between the plaintiff and a third party'; (2) the 'defendant's knowledge

28

of the contract'; (3) the 'defendant's intentional procurement of the third-party's breach of the contract without justification'; (4) 'actual breach of the contract'; and (5) 'damages resulting therefrom.'" *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401–02 (2d Cir. 2006) (citing *Lama Holding Co. v. Smith Barney Inc.,* 88 N.Y.2d 413, 424 (1996)). Plaintiff has not alleged any of these elements. It is not at all clear to this Court from Plaintiff's pleading what contract forms the basis of this claim, nor does Plaintiff attempt to clarify same in his opposition on this motion. Accordingly, Plaintiff's claim of tortious interference with contract is dismissed.

A claim for prima facie tort has four elements: "(1) intentional infliction of harm, (2) causing special damages, (3) without excuse or justification, (4) by an act or series of acts that would otherwise be lawful." *Carlson v. Geneva City Sch. Dist.*, 679 F. Supp. 2d 355, 371–72 (W.D.N.Y. 2010) (citing *Curiano v. Suozzi,* 63 N.Y.2d 113, 117 (1984)). "The plaintiff must plead special damages, and that the defendant was solely motivated by disinterested malevolence." *Id.* "[A] critical element of the cause of action is that plaintiff suffered specific and measurable loss, which requires an allegation of special damages. Such damages must be alleged with sufficient particularity to identify actual losses and be related causally to the alleged tortious acts." *Id.* (citing *Epifani v. Johnson,* 882 N.Y.S.2d 234, 242 (N.Y. App. Div. 2009) (citations and internal quotation marks omitted).

Merely alleging general damages is insufficient. *Id.* (citing *Von Ludwig v. Schiano,* 258 N.Y.S.2d 661, 663 (N.Y. App. Div. 1965) ("The failure to itemize special damages does not render a cause of action insufficient . . . except in special cases where such damages are essential to the cause of action, as, for example, in an action based upon a prima facie tort.").

With regard to Defendants' alleged motivation, reading the SAC with the required liberality, Plaintiff's allegations amount to a claim that Defendants acted for purposes of retaliation

and were malicious. However, "prima facie tort requires that the acts complained of would otherwise be lawful but for defendant's disinterested malevolence," and "racial harassment" is not "conduct that is otherwise lawful." *Chen v. U.S.,* 854 F.2d 622, 627, 629 (2d Cir. 1988) (citations and internal quotation marks omitted). Retaliating against Plaintiff for filing a union grievance, filing a discrimination charge and commencing this action likewise would not be "otherwise lawful conduct." *Id*.

Further, Plaintiff merely alleges that he "has suffered economic damages as a result of the discrimination and retaliation, including out of pocket medical expenses, and other potential per session and summer school opportunity losses, as well as premature constructive discharge of his employment." SAC ¶ 36.  Accordingly, Plaintiff's prima facie tort cause of action is dismissed.

## <u>CONCLUSION</u>

Based on the foregoing, Defendants' motion to dismiss is GRANTED in part and DENIED in part.  Defendants' motion to dismiss the first claim for relief is granted as to the claims of race and national original discrimination, but denied as to the retaliation alleged to have occurred in February and May 2018. Defendants' motion to dismiss the second claim for relief is granted in its entirety. Defendants' motion to dismiss the third claim for relief is denied as against the District, and granted as to the individual Defendants McGuffog, Levine, and Hendrickson. Finally, Defendants' motion to dismiss the fourth through seventh claims for relief is granted in its entirety.

The parties shall appear by telephone for an initial case management and scheduling conference on June 24, 2020 at 12:00 p.m. At the time of the scheduled conference, all parties shall call the following number: (888) 398-2342; access code 3456831. The parties are directed to confer at least 21 days prior to the conference date and attempt in good faith to agree upon a proposed discovery plan that will ensure trial readiness within six (6) months of the conference date. The

parties are further directed to complete the Civil Case Discovery Plan and Scheduling Order available on my individual webpage on the S.D.N.Y. website in advance of the conference.

The Clerk is directed to terminate Carolyn McGuffog, Robin Levine, and Robert Hendrickson as Defendants, and to terminate the motion. (Doc. 43).

**SO ORDERED:**

Dated:  New York, New York
        May 4, 2020

Philip M. Halpern
United States District Judge